IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| DORPAN, S.L., <br><br> Plaintiff, <br><br> vs. <br><br> HOTEL MELIÁ, INC. <br><br> Defendant | CIVIL NO. 09-1138 (JP) <br><br><br> DECLARATORY JUDGMENT; LANHAM ACT |
| HOTEL MELIÁ, INC. <br><br> Plaintiff, <br><br> vs. <br><br> DORPAN, S.L., ET AL <br><br> Defendants | CIVIL NO. 09-1188 (JP) <br><br> REMOVAL OF STATE COURT ACTION <br> FOR INJUNCTION AND DAMAGES <br><br> AFFIRMATIVE DEFENSES AND CLAIM <br> UNDER LANHAM ACT |

MOTION FOR SUMMARY JUDGMENT
AND MEMORANDUM OF LAW

TO THE HONORABLE COURT:

NOW COME Dorpan S.L. (Dorpan), Sol Meliá S.A. (Sol Meliá) and Desarrolladora del Norte S. en C. S.A. (Desarrolladora) through their undersigned attorneys and for their Motion for Summary Judgment under FRCP 56, respectfully state and pray as follows:

PROCEDURAL BACKGROUND

Hotel Meliá, Inc. (HMI) commenced this action on October 30, 2008 by filing before the Court of First Instance of Puerto Rico, in Ponce, a lawsuit against Dorpan S.L., GRAN MELIÁ Puerto Rico Resorts & Villa, and John Doe seeking to enjoin use of the

1

GRAN MELIÁ U.S. Registered service mark in connection with the GRAN MELIÁ Puerto Rico luxury resort in Río Grande, Puerto Rico. HMI's action is founded on a declaratory judgment the Superior Court of Puerto Rico entered by default in 1976 against a one Inmobiliaria Meliá de Puerto Rico, ruling that HMI is the only entity in Puerto Rico that has the exclusive right to do business as "Hotel Meliá".

On December 2, 2008 HMI amended the complaint to include Desarrolladora del Norte S. en C., S.A. as additional defendant.

On February 12, 2009 Dorpan filed subject petition for declaratory judgment, for a ruling holding that it is plainly entitled to use in commerce, including Puerto Rico, the GRAN MELIÁ U.S. registered service mark for hotel services, on grounds of owning a number of U.S. service marks with the term MELIÁ, together with U.S. Registration No. 2124741 for GRAN MELIÁ, all of which are registered in the Principal Register of the U.S. Patent and Trademark Office (USPTO) [Docket 01].

Process on HMI was served on February 20, 2009 [Docket 05].

On February 27, 2009, Desarrolladora removed HMI's Superior Court proceeding before this Court and the matter was assigned Case No. 09-1188(DRD).

On March 6, 2009 the Court ordered both cases consolidated [Docket 07].

On March 20, 2009 Desarrolladora answered HMI's amended complaint and counterclaimed against HMI for declaratory judgment on the same grounds Dorpan pleads [Docket 12].

On April 15, 2009 HMI answered Dorpan's petition for declaratory judgment and counterclaimed against Dorpan for injunctive relief and damages [Docket 14].

On May 5, 2009 Dorpan answered HMI's counterclaim [Docket 18].

On May 6, 2009 HMI filed a second amended complaint to include Sol Meliá S.A. into the lawsuit [Docket 20].

On May 8, 2009 Desarrolladora answered HMI's second amended complaint and restated its counterclaim for declaratory judgment [Docket 22].

On July 17, 2009 HMI served summons, on the second amended complaint, on Sol Meliá [Docket 25].

On August 21, 2009 Sol Meliá answered HMI's second amended complaint [Docket 27].

Following the initial scheduling conference held on November 5, 2009, the parties engaged in discovery. Discovery is now over and the time to file dispositive motions is due today November 1, 2010.

### UNCONTESTED MATERIAL FACTS

What follows is a summary of the uncontested material facts which are necessary to resolve this matter.

### SOL MELIÁ

1.  Sol Meliá is a public limited Spanish company with offices at Gremio Toneleros 24, Palma de Mallorca, Baleares, Spain.

2.  Sol Meliá became organized on June 24, 1986 under the name of Investman, S.A.

3.  Sol Meliá, its subsidiaries and affiliate companies are engaged in the management and operation of owned or rented hotels and vacation clubs.

4.  Sol Meliá is the largest hotel chain in Spain, the third largest in Europe, and the twelfth largest in the world.

5.   Currently, Sol Meliá operates more than 300 hotels in 30 countries[1] and 4 continents, and has a workforce of more than 35,000 employees.

6.   Sol Meliá uses under license from Dorpan the following commercial brands in connection with its hotel operations: GRAN MELIÁ, MELIÁ HOTELS & RESORTS, ME BY MELIÁ, INNSIDE, TRYP HOTELS, SOL HOTELS, PARADISUS RESORTS and SOL MELIÁ VACATION CLUB.

7.   The beginnings of Sol Meliá date back to the mid 50s, when Gabriel Escarrer Juliá founded HOTELES MALLORQUINES, S.A. (HMSA) (the predecessor in interest of Sol Meliá).

8.    During the 60's and the 70's the company grew and expanded throughout the Balearic Islands and the Canary Islands acquiring hotels and resorts.

9.   In 1984, the company acquired HOTASA, a Spanish company that owned a number of hotels in Spain.  The following year HMSA opened its first hotel outside Spain, in Bali (Indonesia). The expansion continued in the subsequent years, with the opening of additional hotels in Europe, the Americas, South-East Asia, the Mediterranean and the Caribbean.

10. In 1987, the company acquired HOTELES MELIÁ, S.A., a Spanish company that owned a network of hotels in Spain.

11. On March 15, 1995 Dorpan acquired all worldwide rights to the MELIÁ brand.

12. In 1996, Sol Meliá changed its name from Investman, S.A. to Sol Meliá, S.A.

---

[1] The company has hotel operations in Germany, Argentina, Brazil, Bulgaria, Chile, China, Costa Rica, Croatia, Cuba, Egypt, Spain, the United States, France, Greece, the Netherlands, Indonesia, the Cayman Islands, Italy, Luxembourg, Malaysia, Mexico, Panama, Peru, Portugal, Puerto Rico, the United Kingdom, the Dominican Republic, Singapore, Switzerland, Tunisia, Uruguay, Venezuela and Vietnam.

DORPAN

13. Dorpan is a Spanish company with an address at Gremio Toneleros 24, Palma de Mallorca, Baleares, Spain.

14. Dorpan became organized on or about July 31st, 1991 and is a wholly owned subsidiary of Sol Meliá.

15. Dorpan's principal business activity is to own, keep and license to Sol Meliá or Sol Meliá's subsidiaries and affiliates the trademark/service mark portfolio the Sol Meliá hotel conglomerate uses worldwide.

16. In the United States Dorpan owns a number of trademarks with the term MELIÁ which are registered in the Principal Register of the United States Patent and Trademark Office (USPTO) which are listed in the table attached as Exhibit 8 of the Statement of Uncontested Material Facts.

17. All registrations listed in the table Exhibit 8 are valid and enforceable.

18. Combined worldwide sales for Sol Meliá are in billions of dollars; for instance, for fiscal year 2007 sales were in excess of € 1,350,000,000, on or about $1,750,000,000.

19. As a result, the MELIÁ brand has developed immense goodwill.

20. The term MELIÁ stands today in the world as a symbol of fine luxury hotel and resort services that the trade and the public have come to associate with Dorpan and Sol Meliá.

DESARROLLADORA

21. Desarrolladora is a special partnership formed, organized and doing business in accordance with the laws of Puerto Rico.

5

22. Desarrolladora is a Sol Meliá company that owns a luxury resort hotel at Coco Beach, Río Grande, Puerto Rico that operates under the GRAN MELIÁ service mark.

23. Originally, the hotel opened and did business as an all inclusive resort[2] under Sol Meliá's PARADISUS brand.

24. But the all inclusive business model did not work and the hotel lost money.

25. As a result, Sol Meliá discontinued the all inclusive business model, upgraded the facilities and turned the property into a luxury resort under the GRAN MELIÁ Puerto Rico brand.

26. The GRAN MELIÁ brand stands for Sol Meliá's upscale service mark which, Sol Meliá uses worldwide in connection with its top of the line hotels.

27. On May 1, 2007 the hotel reopened and began operating as GRAN MELIÁ PUERTO RICO.

HMI

28.  HMI is a closed family corporation organized and doing business under the laws of Puerto Rico with an address at 75 Cristina Street, Ponce, Puerto Rico.

29.  HMI owns and operates at 75 Cristina Street, Ponce, Puerto Rico, a hotel that does business as "Hotel Meliá".

30. On or about March 1, 1943 HMI became organized under the laws of Puerto Rico.

31. HMI currently owns or operates the "Hotel Meliá".

32. For at least 80 years, HMI and HMI's predecessors in interest have done business as "Hotel Meliá".

---

[2] The price the guest pays covers all expenses/charges, including lodging, plus the consumption of all food and beverages, entertainment and all hotel amenities.

33. The only address - anywhere in the world - where HMI, as well as, HMI's predecessors in interest have done business as "Hotel Meliá" is at 75 Cristina Street, Ponce, P.R.

34.  HMI as well as HMI predecessors in interest never expanded their hotel business to other locations in Puerto Rico, the United States or anywhere else in the world, beyond 75 Cristina St., Ponce.

35. HMI has no plans to expand to other locations apart from 75 Cristina St., Ponce, P.R.

36. In short, "Hotel Meliá" is the only hotel HMI owns or operates.

37. The following hotels in Ponce compete with HMI: i) Ponce Hilton; ii) Holiday Inn, iii) Howard and Johnson, iv) Ponce Ramada, and v) Best Western at Guayanilla.

38. Neither HMI nor HMI predecessors in interest have owned property or hotels in Cuba.

39. Neither HMI nor HMI's predecessors in interest have registered "Hotel Meliá" with the USPTO or the Puerto Rico Trademark Office.

40. The following text appears at HMI's internet site: "Our Hotel has no relation to the Melia Hotels from Spain."

41. The hotel's principal offerings are its location in the heart of the Ponce historic district, its proximity to key museums and the historic character of its building.

42. On February 18, 1976 HMI filed at the Superior Court of Puerto Rico, the following lawsuit for declaratory judgment: Civil Number 76-884(904) *Hotel Meliá, Inc. v. Inmobiliaria Meliá de P.R.*

43. In that lawsuit, HMI claimed that Inmobiliaria Meliá de PR (Inmobiliaria) had plans to open and to operate in San Juan a hotel using any of the following names: Hotel Meliá, Apartotel Meliá or Condo Hotel Meliá.

44. HMI sustained and sought from the Court a ruling holding that to allow Inmobiliaria to use any of these names to designate its hotel, amounted to unfair competition and a violation of Puerto Rico's antitrust laws, Act No. 77 of June 25, 1964 (10 L.P.R.A §266).

45. On or about August 15, 1978 counsel representing Inmobiliaria filed an informative motion stating that the issue before the Court had turned moot because Inmobiliaria had ceased doing business, had lost its property when the Chase Manhattan Bank foreclosed on the mortgage and that in short, there was no chance whatsoever for the property to be operated as a hotel.

46. On September 8, 1978 the Court issued a default Declaratory Judgment ruling that the Meliá family, through HMI, had the right to the exclusive use in Puerto Rico of the name Meliá and Hotel Meliá without interference from others.

47. Inmobiliaria is not, and was not, related to Sol Meliá.

48. HMI's General Manager, Mr. Nicolás Albors stated in the course of his deposition that on or about the time the Superior Court ruled the declaratory judgment, he asked his lawyer to apply for the registration of "Hotel Meliá" at the USPTO because he wanted to "…be sure that we cover everything in the States.' I think that the lawyer mentioned it, that we should do that…" Despite the advice of his counsel he never followed up with the registration because he was busy with other matters.

DORPAN'S U.S. REGISTRATIONS FOR MELIÁ HOTELES AND GRAN MELIÁ

49. Dorpan owns U.S. Registration 2133599 for MELIÁ HOTELES, in Class 42 for use in commerce in connection with hotel services, hotel management services for others, lodging and restaurant services rendered by hotels, boarding house, [tourist camp, tourist home and farms] restaurants, self service restaurants and canteens, making hotel reservation for others ("hotel services").

50. U.S. Registration 2133599 for MELIÁ HOTELES is incontestable under 15 USC § 1065.

51. U.S. Registration 2133599 for MELIÁ HOTELES is alive and valid and was last renewed for an additional period of 10 years on February 7, 2008.

52. Dorpan also owns U.S. Registration 2124741 for GRAN MELIÁ, in class 42 for use in commerce in connection with hotel services, restaurant services, arranging for hotel and temporary accommodation reservation services ("hotel services").

53. U.S. Registration 2124741 for GRAN MELIÁ is alive and valid and was last renewed on January 21, 2008 for an additional period of 10 years.

USE IN COMMERCE OF MELIÁ HOTELES AND GRAN MELIÁ

54. The Sol Group Corp. (Sol Group) is a Delaware corporation that became organized on October 25, 1988.

55. Sol Group is a wholly owned subsidiary of Sol Meliá with offices at 800 Brickell Avenue, Suite 1000, Miami, Fla. 33131.

56. Sol Group engages in the United States, in the marketing and sale of Sol Meliá's hotels.

57. Sol Group negotiates and closes deals with the travel trade, including retail and wholesalers as well as travel and tour operators, for vacation packages in hotels in the Sol Meliá chain, including hotels using the MELIÁ family of brands as well as, GRAN MELIÁ.

58. Exhibit 33 are representative sample contracts negotiated by Sol Group.

59. Sol Group is also responsible for arranging and executing the publicity and advertisement of the MELIÁ family of brands in the United States.

60. Exhibit 34 also includes representative sample reports of sales generated in the United States by Sol Group.   Additionally, Exhibit 35 incorporates a sales report, followed by the explanation of Sol Meliá's representative, Ms. Mónica Julve.

61. During the 1990s, Sol Meliá managed or operated the MELIÁ ORLANDO SUITES AND VILLAS HOTEL, at 4787 W. Irlo Bronson Memoria Hwy, Kissimmee, Fl. 34746.

62. This hotel ceased operating on or about 1995.

63. Since 2004 and as of the date hereof, Sol Meliá manages or operates the SOL MELIÁ VACATION CLUB at 4700 Millenia Boulevard Orlando, FL 32839-6103.

64. Since May 1, 2007 Sol Meliá manages or operates the GRAN MELIÁ Puerto Rico at Coco Beach, Río Grande, Puerto Rico.

65. The GRAN MELIÁ Puerto Rico is in Río Grande, on the northeastern shore of Puerto Rico offering luxury accommodations, restaurants, bars, beach, swimming pool, spa, golf course and tennis courts, among other amenities.

66. Sol Meliá, Desarrolladora, Dorpan and Sol Group are related companies within the meaning of 15 U.S.CA. §§1055 and 1127.

### SUMMARY JUDGMENT STANDARD

*Rule 56 of the Federal Rules of Civil Procedure* (FRCP) provides, in part, that "[a] party claiming relief may move, with or without supporting affidavits, for summary judgment on all or part of the claim. […] The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. […]".

"The purpose of summary judgment motion is to pierce the boilerplate of the pleadings and assay the parties proof in order to determine whether trial is actually required". *Velazquez-Ortiz* v. *Vilsack*, 2010 U.S. Dist. LEXIS 35213, 5, (DCPR) (internal quotation marks omitted).

"The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record." *Id*.

An issue or "[…] dispute is genuine if the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party". *Cabrera-Cordova* v. *Vigilantes, Inc.*, 2010 U.S. Dist. LEXIS 32994, 5, (DCPR); *Id*, 6; *Thompson* v. *The Coca-Cola Company*, 522 F. 3d 168, 175 (1st Cir. 2008); *Napier* v. *F/V Deesie*, 454 F.3d 61, 66 (1st Cir. 2006).

A "material fact", is one that has the potential to affect the outcome of the suit. *Id*; *Mack* v.*Great Atl. And Pac. Tea Co., Inc.*, 871 F. 2d 179, 181 (1st Cir. 1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case".

*Napier* v. *F/V Deesie*, supra; *Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986).*

"The Court must look at the record in the light most favorable to the non-moving party.  However, the Court need not rely on unsubstantiated allegations.  Rather, the non-moving party may only overcome the motion with evidence sufficient to raise a genuine issue of fact that is both relevant and material.  That is, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion. […] The non-moving party may not rest on mere allegations or denials of his pleading […]." *Cabrera-Cordova* v. *Vigilantes, Inc.*, supra, 3-4 (internal quotation marks and citations omitted).   Indeed, the non-movant must affirmatively show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial".  *First Nat. Bank of Ariz. V. Cities Service Co., 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968).*

As will be shown here, on the basis of foregoing statement of uncontested material facts it is appropriate for the Court to grant summary judgment ruling that under the Lanham Act Dorpan, Sol Meliá and Desarrolladora are entitled to use, without interference from HMI, U.S. registration number 2124741 for GRAN MELIÁ in connection with the GRAN MELIÁ Puerto Rico at Coco Beach Río Grande, Puerto Rico.

**ARGUMENT**

HMI claims to own the exclusive right to use in Puerto Rico the term MELIÁ on grounds i) of common law seniority for doing business in Ponce as "Hotel Meliá" for over 80 years, and because, ii) of the default judgment that the Superior Court of Puerto

Rico entered in the matter of *Hotel Meliá, Inc. v. Inmobiliaria Meliá de P.R.,* Civil Number 76-884(904).

That HMI has done business in Ponce as "Hotel Meliá" for more than 80 years is not an issue.  In fact, the appearing parties do not challenge HMI's right to continue using that name within HMI's limited market enclave of Ponce.  However, for the reasons that follow, Dorpan, Sol Meliá and Desarolladora are plainly entitled to use the GRAN MELIÁ federally registered service mark to designate in commerce the GRAN MELIÁ Puerto Rico hotel and resort located at Rio Grande, Puerto Rico.

A) DORPAN'S RIGHT TO USE THE GRAN MELIÁ FEDERALLY REGISTERED SERVICE MARK IN PUERTO RICO

Dorpan clearly owns a superior right to use in commerce, including Puerto Rico, the service mark GRAN MELIÁ.  The superiority of DORPAN'S rights emanates from the Lanham Act, 15 USCA § 1051 *et seq.*, and from the protection that flows from the fact that it owns U.S. registration number 2124741 for GRAN MELIÁ in class 42 for use in commerce in connection with hotel services.  In addition, Dorpan owns a number of other U.S. registrations all with the MELIÁ brand, as listed in the table Exhibit 8 of the statement of uncontested material facts, for use in connection with hotel services.  All of these registrations are valid and enforceable (the MELIÁ marks).  In fact, U.S. registration number 2133599 for MELIÁ HOTELES in class 42 is incontestable in accordance with 15 U.S.C.A. §1065[3].

---

[3] When a registration becomes incontestable such registration "…shall be conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce. 15 U.S.C.A. § 1115(b).

The Lanham Act plainly provides that "[a] certificate of registration of a mark upon the principal register […] shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the certificate, subject to any conditions or limitations stated in the certificate." 15 USCA § 1057. Moreover, a mark registered on the Principal Register "shall be admissible in evidence and shall be prima facie evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the registrant's exclusive right to use the registered mark in commerce on or in connection with the goods or services specified in the registration…" 15 USCA §1115 (a).

The term "commerce" means "…all commerce which may lawfully be regulated by Congress." 15 U.S.C.A. § 1127. Thus, "[i]t is clear that the Act extends to the full reach of Congress under the Commerce Clause, Article I, § 8, clause 3 of the Constitution…", which clearly includes Puerto Rico. *Purolator, Inc. v. Efra Distributors, Inc*. 687 F.2d 554, at 558-559 (1st Cir. 1982).

What's more, under 15 U.S.C.A. § 1072, registration of GRAN MELIÁ as well as of the MELIÁ family of marks on the Principal Register is constructive notice of Dorpan's ownership. Such registrations afford nationwide protection to Dorpan's registered marks, regardless of the areas in which Dorpan actually uses them.

> Section 1072 affords the registrant nationwide protection for its registered mark, regardless of the geographic area in which the registrant actually utilizes his trademark. See John R. Thompson Co. v. Holloway, 366 F.2d 108, 115 (5th Cir. 1966); Dawn Donut Company v. Hart's Food Stores, Inc., 267 F.2d 358, 362 (2d Cir.1959).

Most importantly, the constructive notice provision of 15 U.S.C. § 1072, establishes that the owner of a federal registration . . . has the security of knowing that no one else may, henceforth legitimately adopt his trademark and create rights in another area of the country superior to his own. In this respect, [15 U.S.C. § 1072] is perhaps, the best example of the intent of Congress to provide for a thriving business environment by granting nationwide protection by expanding business. . . . It would be illogical and inconsistent with the objectives of the Lanham Act, not to provide for nationwide coverage where there is more than one registration -- provided there will be no public confusion created thereby. In re Beatrice Foods Co., 57 C.C.P.A. 1302, 429 F.2d 466, 472-73 (1970). *Davidoff Extension S.A. and Davidoff et Cie., v. Davidoff Comercio e Industria Ltda., Surtidora Panamericana Inc., and Aero-Boutiques de Puerto Rico, Inc.* 747 F. Supp. 122, 128 (DPR 1990).

Hence it is axiomatic that Dorpan as lawful owner of U.S. Registration 2124741 for GRAN MELIÁ and of the other U.S. registered Meliá marks is entitled as a matter of trademark federal law to use GRAN MELIÁ in commerce, including Puerto Rico to designate the GRAN MELIÁ Puerto Rico resort hotel in Rio Grande.

Nonetheless, HMI questions the validity of Dorpan's U.S Registrations claiming that Dorpan misrepresented "use in commerce" when it applied for registration at the USPTO, because in HMI's mind Dorpan or Sol Meliá do not own or run hotels in the U.S. or have used any of the MELIA service marks in commerce in connection with hotel services. [HMI's Second Amended Complaint, Docket 20, at p. 10]

Clearly, to defeat the validity presumption that the Lanham Act grants to Dorpan's registration, HMI needs to do much better than speculate. HMI must come forward with clear and convincing evidence – that does not exist – that Dorpan lied about use when it applied for registration.

In any event, HMI's contention misses at least two fundamental points which we will reference briefly.

15

One, that the USPTO granted U.S. Registration 2133599 for MELIÁ HOTELES and U.S. Registration 2124741 for GRAN MELIÁ on the basis of Dorpan's registrations in Spain, and not on the basis of earlier use in commerce.

As owner of Spain Registration No. 1513756 for MELIÁ HOTELES, the USPTO granted U.S. Registration 2133599 for MELIÁ HOTELES.  Under 15 U.S.C.A. § 1114e "…the holder of an international registration shall be entitled to the benefits of extension of protection of that international registration to the United States to the extent necessary to give effect to any provision of the Madrid Protocol." In short, this registration was granted on the basis of the foregoing Spanish registration and not on prior use in commerce.

A similar result applies in connection with U.S. Registration 2124741 for GRAN MELIÁ granted on the basis of 15 U.S.C.A. § 1114d. This section provides that "…[t]he holder of an international registration that is based upon a basic application filed with the United States Patent and Trademark Office or a basic registration granted by the Patent and Trademark Office may request an extension of protection of its international registration by filing such a request (1) directly with the International Bureau; or (2) with the United States Patent and Trademark Office for transmittal to the International Bureau, if the request is in such form, and contains such transmittal fee, as may be prescribed by the Director." The U.S Certificate of Registration for GRAN MELIÁ shows that this registration was granted on the basis of Spain registration number 1966777 and not on the basis of prior use.

Two, HMI's claim of lack of use in commerce is a misconception of the law. HMI seems to believe that to have "use in commerce" Dorpan or Sol Meliá must own or

operate hotels in U.S. soil. This is not the state of the law. What HMI misses is the fact that Sol Group is Sol Meliá's marketing and sales organization in the United States, responsible not only for advertisement and marketing, but for the actual sale to the travel trade of rooms and stay packages at MELIÁ brand hotels through out the world. Hence, even assuming *arguendo* that Sol Meliá does not operates hotels in U. S. soil, which is not the case, sales by Sol Group to the travel trade, translate into hotel services to U. S. citizens at MELIÁ brand hotels located in other nations. Consequently, the unavoidable legal conclusion is that foreign trade is present, and that as such, the requirement of "use in commerce" under the Lanham Act is satisfactorily met. *International Bancorp, LLC; International Services, Incorporated; International Lotteries, LLC; Las Vegas Sportsbook, Incorporated; Britannia Finance Corporation, v. Societe Des Bains De Mer Et Du Cercle Des Etrangers A Monaco,* 329 F.3d 359, 365-366 (4th Cir. 2003) (Holding that while the record only showed that a New York office of the owners/operators of a casino in Montecarlo advertised the "Casino de Monte Carlo", casino services were rendered in foreign trade, because the record showed that United States citizens went to and gambled at the casino. When taken together with the undisputed fact that the Casino de Monte Carlo is a subject of a foreign nation, the unavoidable legal conclusion is that foreign trade was present, and that as such, so also was "commerce" under the Lanham Act.)

In conclusion, even if there were no MELIÁ hotel operations in U.S. soil "use in commerce" is met by the fact that rooms, stays and travel packages for the Sol Meliá chain throughout the world are sold to United States citizens by the Sol Group.

Last but not least we shall briefly address HMI's claim based on the Helms Burton Act.

Suffice to say that HMI or HMI's predecessors in interest never owned property in Cuba. Therefore, HMI lacks standing to raise any issue under this Act. *Elvira de la Vega Glen, Robert M. Glen v. Club Méditerranée, S.A*. 450 F 3d 1251, 1254-1255 (11th Cir 2006).

Second, since enacted the Helms Burton Act has never been enforced because by presidential decree its effects have been suspended. *Id*.

In short HMI's claim based on the Helms Burton Act is bizarre, has no place in this litigation and should be ordered stricken.

B)  AT BEST HMI IS ENTITLED TO CONTINUE DOING BUSINESS AS "HOTEL MELIÁ" AT 75 CRISTINA ST., PONCE, PUERTO RICO.

For more than 80 years, HMI and HMI's predecessors in interest have done business as "Hotel Meliá" only at 75 Cristina St., in Ponce.  HMI never expanded beyond this narrow market enclave, and what's more, has no plans to expand anywhere else.

The reason for not expanding beyond Ponce is because the company decided to concentrate in their single facility at 75 Cristina St. *(Exhibit 16, i.e., pages 15-19 and 29-30 of Albors GordisDeposition Transcript).* HMI affirms that the main attraction the hotel offers guests is its location in downtown Ponce, next to museums and sites of interest, coupled with the historic character of its facilities. Succinctly said, HMI's zone of doing business as "Hotel Meliá" is a small limited enclave within Ponce where it has remained content and dormant for many years with no intention of expanding to other areas of Puerto Rico, the United States or elsewhere in the world.

Under these circumstances the weight of authorities stands for the proposition that the zone of use of a non registered senior user - as is the case with HMI - is frozen as of the date of registration to another - Dorpan - because registration creates constructive notice which ends the possibility of good faith expansion. J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition*, 4th Edition, Volume 4, 2002 § 26:40, page 26-67.

U.S. registration number 2124741 for GRAN MELIÁ was granted on December 30, 1997.  U.S. registration number 2133599 for MELIÁ HOTELES was granted on February 3, 1998.  Under the Lanham Act, the earlier registration date froze HMI's zone of use to Ponce.

The inquiry to determine the extent of the zone of use of the non registered senior user "[…] should focus on the parties' (1) previous business activities; (2) previous expansion or lack thereof; (3) dominance of contiguous areas; (4) presently-planned expansion; and where applicable (5) possible market penetration by means of products brought in from other areas."  *Weiner King, Inc. v. The Wiener King Corporation*, 615 F. 2d 512, 523 (C.C.P.A. 1980) citing with approval *In re Beatrice Foods Co.*, 57 CCPA 1302, 1312-13, 429 F. 2d 466, 475, 166 USPQ 431, 437-38 (1970).

Looking at these factors is clear that HMI's (1) previous business activities are confined to Ponce, (2) has never expanded beyond Ponce, (3) does not dominate contiguous areas as it is clear that there are other competing hotels in the zone and (4) has no plans for expansion.

In sum, "[i]n the present case, reliance in factors 1 thru 4 weighs overwhelmingly in favor of [Dorpan]. This is clear from the [statement of uncontested material facts]

which demonstrates that [HMI] comes up virtually empty handed in all of the categories."

*Weiner King, Inc. v. The Wiener King Corporation*, supra.

> In appropriate situations, courts have restricted a prior user to its actual trade territory in favor of a later user who has appeared on the horizon. See <u>Jacobs v. Iodent Chemical Co., 41 F.2d 637 (3d Cir. 1930)</u>. [8] In <u>Zimmerman v. Holiday Inns of America, 438 Pa. 528, 266 A.2d 87 (1970)</u>, cert. denied, <u>400 U.S. 992 (1971)</u>, the facts revealed that a local motel operator had unsuccessfully sued a nationwide franchise motel chain which he felt was encroaching on his territory, thus alerting the chain, a later user, to his existence. The later user then opened fifteen additional motels in the state. In a subsequent suit to enjoin the chain, the court, nothing [sic] a lack of bad faith on the part of the chain, limited injunctive relief to an area within twenty-two miles of the local operator's motels. The Pennsylvania Supreme Court affirmed, thus acknowledging the right of the later user to operate in areas into which it had expanded after notice of the existence of the prior user. *Id.*

In *Weiner King, Inc. v. The Wiener King Corporation*, supra, the United States Court of Custom and Patent Appeals noted that "[t]he commentators have not been silent on this issue. Restriction of a prior user to its actual trade territory and zone of probable expansion has been noted.  See 2 J. McCarthy, Trademarks ad Unfair Competition, §26:8 at 218 & n.13 (1973).   One established authority has stated that the Hanover and Rectanus cases, supra, <u>that the prior user in each case abandoned its right to expand its trade when it failed to exercise that right</u>. 1 H. Nims, unfair Competition and Trade Marks, § 218 (b) at 645 (4th ed. 1947)" (our underscores).

HMI plainly failed to exercise the right to expand in more than one way. First, by remaining dormant and content in Ponce, and two, by not registering with the USPTO. In fact, the latter – not to register with the USPTO – was a voluntary decision. It is clear from the Statement of Uncontested Material Facts that since at least 1976 when the Superior Court entered the default judgment against Inmobiliaria, that HMI knew well the benefits and protection that the registration of a brand with the USPTO affords. As

HMI's general manager testified in his deposition, HMI wanted to "…be sure that we cover everything in the States…"

What's more, HMI's counsel at the time recommended filing for registration at the USPTO but HMI never followed up with registration because HMI was busy with other matters.

Evidently what this means is that for HMI registration at the USPTO, for protection in all U.S. commerce, was never a priority since expanding beyond the confines of Ponce was never in its mind. Hence, what HMI owns, at best, is a common law right to use "Hotel Meliá" as a trade name in Ponce.

The foregoing result is in line with Congress's "[…] policy of encouraging prompt registrations of marks by rewarding those who first seek registration under the Lanham Act." *Weiner King, Inc. v. The Wiener King Corporation*, supra, at 523-524.

By not expanding and not seeking protection thru registration, HMI has confined its territory to downtown Ponce. *Id*. at 523.

Moreover, reason and common sense compel the conclusion that use of the GRAN MELIÁ Puerto Rico mark is founded on the weight, worldwide fame and immense goodwill of the MELIÁ marks and is not a palm off or attempt to trade on HMI's "Hotel Meliá" trade name. *Id* at 518.  "[…T]he avowed purpose of the Lanham Act is to grant nationwide protection for expanding businesses by registration […]". *Id*. at 517. Hence, use of GRAN MELIÁ Puerto Rico comes within Dorpan's right to expand through out the whole United States, including Puerto Rico.

Last but not least, HMI took steps to distance itself from Dorpan or Sol Meliá by advertising in its internet site that its hotel is not related to the MELIA hotels from Spain. Hence, there is no likelihood of confusion.

C) THE 1976 DEFAULT JUDGMENT OF THE SUPERIOR COURT DOES NOT BIND DORPAN, SOL MELIÁ OR DESARROLLADORA

HMI sustains that the 1976 default judgment of the Superior Court of Puerto Rico, 1) conclusively resolved that HMI has the sole exclusive right to use the term MELIÁ in Puerto Rico, and 2) Dorpan is precluded from litigating the matter again as a result of that judgment.  In short, HMI pleads res judicata in its collateral estoppel variant.

To address this issue one must look at the Civil Code of Puerto Rico. "It is now well established that local law should be used in deciding the preclusive effect to be given a local judgment in a federal court." *Oliveras* v. *Miranda Lopo*, 800 F.2d 3, 6 (1st. Cir.1986).

Under the Civil Code of Puerto Rico "[…i]n order that the presumption of the res adjudicata (sic) may be valid in another suit, it is necessary that, between the case decided by the sentence and that in which the same is invoked, there be the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such. [….]" 31 L.P.R.A. § 3343.

To determine if res judicata applies or if the 1976 default judgment binds Dorpan, Sol Meliá and Desarrolladora the analysis must focus "[…] on the pleadings brought in the Superior Court of Puerto Rico and the subsequent complaint filed in the federal Court". *Oliveras* v. *Miranda Lopo*, supra. A review of the pleadings in that lawsuit shows

that res judicata is simply not available since "…the most perfect identity between the things, causes, and persons of the litigants, and their capacity as such…" is missing.

First, it is clear that Dorpan, Sol Meliá and Desarrolladora were not parties in that case. What's more, there is no proof whatsoever that Inmobiliaria which was a domestic Puerto Rico corporation, was or is somehow connected to Dorpan, Sol Meliá and Desarrolladora. In fact, all three became organized much later in time, as the Statement of Uncontested Material Facts shows. In addition, by the time the Superior Court entered the default declaratory judgment Inmobiliaria had shut down and was not in business.

Two, the issues here are entirely different from those that HMI brought before the Superior Court. The complaint and the amended complaint filed in that case establish that HMI's cause of action was for unfair competition, based on Puerto Rico's antitrust law, Act no. 77 of June 25, 1964.  By contrast Dorpan's petition for declaratory judgment is based on the Federal Trademark Act and Dorpan's U.S. service marks registrations. Thus, at the outset, it is clear that Dorpan's petition sets forth a new and different cause of action.

Furthermore, "…[t]he policy . . . to provide protection of federally registered marks used in interstate commerce, 'may not be defeated or obstructed by State law' and [if] state law conflicts with the policy it 'must yield to the superior federal law…'", *Davidoff Extension S.A. and Davidoff et Cie., v. Davidoff Comercio e Industria Ltda., Surtidora Panamericana Inc., and Aero-Boutiques de Puerto Rico, Inc*., supra, at 127-128.

Hence, HMI's contention that the 1976 Superior Court default judgment is controlling on the basis of res judicata is clearly erroneous as the most perfect identity

between the parties and of the causes of action is missing, and what is more such ruling cannot defeat Dorpan's rights under the Lanham Act.

The same result applies as to HMI's contention that the 1976 default judgment entitles it to "make offensive use of the collateral estoppel doctrine" (second amended complaint, Docket 20, page 11). Suffice to say that "[a]s the United States Supreme Court teaches the defense of collateral estoppel should not apply unless there has been a "full and fair opportunity" to litigate the issue in a prior hearing. *Allen v. McCurry*, 449 U.S. at 95; *Montana v. United States*, 440 U.S. 147, 153, 59 L. Ed. 2d 210, 99 S. Ct. 970 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 328, 28 L. Ed. 2d 788, 91 S. Ct. 1434 (1971)." *Id* at 8.  It is clear from the record of the Superior Court proceedings that "there never was a full and fair opportunity to litigate the issue" at a trial on the merits, since the Superior Court entered judgment by default.

What's more, the record is clear that by the time the Superior Court held the default hearing, the matter had become moot because Inmobiliaria had discontinued operations, the Chase Manhattan bank had foreclosed on the mortgage, and as a result Inmobiliaria had lost the property and the hotel project never got off the ground.

In conclusion, it is clear from the foregoing discussion that the 1976 judgment has no weight and is not binding on Dorpan, Sol Meliá and Desarrolladora.

### CONCLUSION

Wherefore, Dorpan, Sol Meliá and Desarrolladora pray for summary judgment ruling that under the Lanham Act they are entitled to use, without interference from HMI, U.S. registration number 2124741 for GRAN MELIÁ in connection with the GRAN MELIÁ Puerto Rico at Coco Beach Río Grande, Puerto Rico.

RESPECTFULLY SUBMITTED, in San Juan, Puerto Rico, this 1st day of November 2010.

CERTIFICATE OF FILING: I hereby certify that on this date, I electronically filed the foregoing document with the CM/ECF system which will send notification of such filing to any legal counsel that may have appeared in the captioned case.

| | |
|---|---|
| S/ANGEL E. ROTGER SABAT | **REICHARD & CALAF, PSC** |
| ANGEL E. ROTGER SABAT | PO Box 9022946 |
| USDC-PR No. 208601 | San Juan, PR 00902-2946 |
| Attorney for Plaintiff | Tel. (787) 725-1004 |
| **MAYMI & RIVERA-FOURQUET, P.S.C.** | Fax (787) 721-0899 |
| PO Box 11897 | S/FEDERICO CALAF LEGRAND |
| San Juan, Puerto Rico 00922 | Federico Calaf Legrand |
| Tel: (787) 474-0070 | (USDC PR 118907) |
| Fax: (787) 474-0071 | E-mail calaf@rcpsc.com |
| arotger@maymirivera.com | |