1

2

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO**

3

4   **DORPAN, S.L.,**

5      **Plaintiff,**

6   **v.**

7   **HOTEL MELIA, INC. et al.,**

8      **Defendants.**

9

10  **HOTEL MELIA, INC. et al.,**

11     **Plaintiff,**

12  **v.**

13  **DORPAN, S.L., et al.,**

14     **Defendants.**

**Consolidated cases:
Civil No. 09-1138 (GAG)
Civil No. 09-1188 (GAG)**

15                    <u>**OPINION AND ORDER**</u>

16          On November 22, 2008, Hotel Meliá, Inc. ("HMI") filed suit against Dorpan, S.L.

17  ("Dorpan"), Sol Meliá, S.A., ("Sol Meliá") and Desarrolladora del Norte, S. en C., S.E.

18  ("Desarrolladora") (collectively "DSD") in Court of First Instance in Ponce, Puerto Rico. (<u>See</u> Civil

19  No. 09-1188, Docket No. 1-1.)  HMI alleged it was entitled to sole use of the term "Meliá"[1] in

20  relation to the hotel industry on the island of Puerto Rico.  (<u>See</u> <u>id.</u>) On February 27, 2009, DSD

21  removed the case to federal court.  (<u>See</u> Civil No. 09-1188, Docket No. 1.)  On February 12, 2009,

22  Dorpan filed a complaint against HMI seeking declaratory judgment for the use of the term "Gran

23  Meliá" to refer to its hotel located in Río Grande.  (<u>See</u> Civil No. 09-1138, Docket No. 1.)  These

24  two actions were consolidated on March 9, 2009. (<u>See</u> Civil No. 09-1188, Docket No. 5.)  Currently

25  before the court is Dorpan's motion for summary judgment seeking enforcement of its federal

26

27          [1] The English translation of Meliá is a type of plant, shrub or tree that has leaves flowers and

28  drupe fruit.  (<u>See</u> Docket No. 49-30.) Also, Meliá can be a last name as it is for HMI.

**Civil Nos. 09-1138 & 09-1188 (GAG)**

trademarks (Docket No. 44) and HMI's motion for partial summary judgment seeking to bar DSD's suit based on issue and claim preclusion (Docket No. 47).  After reviewing the parties' submissions and applicable law, the court **GRANTS** DSD's motion for summary judgment (Docket No. 44) and **DENIES** HMI's partial motion for summary judgment (Docket No. 47).

### I.    Factual and Procedural Background

#### A.    SOL MELIA

Sol Meliá is a public limited Spanish company with offices at Gremio Toneleros 24, Palma de Mallorca, Baleares, Spain.  (See Docket No. 45 at ¶ 1.)  Sol Meliá was organized on June 24, 1986 under the name of Investman, S.A.  (See id. at ¶ 2.)  Sol Meliá, its subsidiaries and affiliate companies are engaged in the management and operation of owned or rented hotels and vacation clubs.  (See id. at ¶ 3.)  Sol Meliá is the largest hotel chain in Spain, the third largest in Europe, and the twelfth largest in the world.  (See id. at ¶ 4.)  The beginnings of Sol Meliá date back to the mid1950's, when Gabriel Escarrer Juliá founded Hoteles Mallorquines, S.A.  (See id. at ¶ 7.)  Hoteles Mallorquines S.A. was later acquired by Sol Meliá.

#### B.    DORPAN

Dorpan is a Spanish company organized on or about July 31, 1991.  (See Docket No. 45 at ¶¶ 13-14.)  Dorpan's principal business activity is to own, keep and license to Sol Meliá or Sol Meliá's subsidiaries and affiliates the trademark/service mark portfolio that the Sol Meliá hotel conglomerate uses worldwide.  (See Docket No. 45 at ¶ 15.)  Dorpan is a subsidiary of Sol Meliá and acquired the trademark rights to the Meliá name from Organización Meliá S.A.

#### C.    DESARROLLADORA

Desarrolladora is a special partnership formed, organized and doing business in accordance with the laws of Puerto Rico.  (See Docket No. 45 at ¶ 21.)  Desarrolladora is a Sol Meliá company that owns a luxury resort hotel at Coco Beach, Río Grande, Puerto Rico and operates under the Gran Meliá service mark.  (See Docket No. 45 at ¶ 22.)  Sol Meliá discontinued its all inclusive business model, and later upgraded the facilities and turned the property into a luxury resort under the Gran

**Civil Nos. 09-1138 & 09-1188 (GAG)**

1   Meliá Puerto Rico brand. (See Docket No. 45 at ¶ 25.)

2          **D.     HMI**

3          HMI is a family corporation organized and doing business under the laws of Puerto Rico.

4   (See Docket No. 45 at ¶ 28.)  HMI owns and operates a hotel at 75 Cristina Street, Ponce, Puerto

5   Rico, named Hotel Meliá.  (See Docket No. 45 at ¶ 29.)  HMI became incorporated under the laws

6   of Puerto Rico on or around March 1, 1943.  (See Docket No. 45 at ¶ 30.)  HMI currently owns or

7   operates Hotel Meliá.  (See Docket No. 31.)  This address is the only address HMI has ever used for

8   its hotel business.  (See Docket No. 45 at ¶ 33.)  HMI has never expanded their hotel business to

9   another location in Puerto Rico, the continental United States, or elsewhere.  (See Docket No. 45

10  at ¶ 34.)  On February 19, 1976, HMI filed a complaint at the Superior Court of Puerto Rico seeking

11  declaratory judgment for sole use of the name Meliá in Puerto Rico ("1978 Case").  (See Docket No.

12  45 at ¶ 42.)

13         HMI's general manager, Nicolás Albors stated that on or about the time the Superior Court

14  ruled on the declaratory judgment, he asked his lawyer to apply for the registration of "Hotel Meliá"

15  at the United States Patent and Trademark Office ("USPTO").  (See Docket No. 45 ¶ 48.)  However,

16  neither HMI, nor its lawyer ever filed for the rights to the "Hotel Meliá" name.  (See Docket No. 45

17  at ¶ 48.)

18         **E.     Dorpan's U.S. Registrations**

19         Dorpan owns the marks to Sol Meliá, Registration Numbers 3100367 and 3003619, Meliá

20  Vacation Club, Registration Number 2966400, Me By Meliá, Registration Number 3518860, Gran

21  Meliá, Registration Number 2124741, Meliá Hoteles, Registration Number 2133599, and Meliá

22  Boutique Hotels, Registration Number 3237241.  (See Docket No. 49-11.)  The Sol Group Corp.

23  ("Sol Group") is a Delaware corporation that became organized on October 25, 1988.  (See Docket

24  No. 45 at ¶ 54.)  The Sol Group is a wholly owned subsidiary of Sol Meliá.  (See Docket No. 45 at

25  ¶ 55.)  Sol Group negotiates and sells packages within the travel trade, including retailers and

26  wholesalers, as well as travel and tour operators, for vacation packages in the Sol Meliá hotel chain,

27

28                                          3

Civil Nos. 09-1138 & 09-1188 (GAG)

1   which includes hotels using the Meliá family of brands as well as Gran Meliá.  (See Docket No. 45

2   at ¶ 57.)  Sol Group is also responsible for arranging and executing the publicity and advertisement

3   of the Meliá family brand in the U.S.  (See Docket No. 45 at ¶ 59.)  During the 1990's Sol Meliá

4   managed or operated the Meliá Orlando Suites and Villas Hotel in Florida.  (See Docket No. 45 at

5   ¶ 61.)  Since 2004, Sol Meliá manages or operates the Sol Meliá Vacation Club.  (See Docket No.

6   45 at ¶ 63.)  Sol Meliá, Desarrolladora, Dorpan and Sol Group are related companies within the

7   meaning of 15 U.S.C. §§ 1055 and 1127.

8                          **F.     Inmobiliaria Meliá**

9         Around 1976, Inmobiliaria de Puerto Rico began to develop a hotel in Puerto Rico.  (See

10  Docket No. 47-1 at ¶ 3.)  HMI sent Inmobiliaria two letters requesting Inmobiliaria to discontinue

11  using the name Meliá.  (See Docket No. 47-1 at ¶ 4.)  On November 7, 1975, Inmobiliaria sent a

12  letter to HMI stating Inmobiliaria had informed their central office in Madrid about the issue

13  regarding the use of Meliá.  (See Docket No. 47-1 at ¶ 5.)  HMI filed suit in the Superior Court of

14  San Juan against Inmobiliaria.  (See Docket No. 47-1 at ¶ 6.)  The Superior Court granted a default

15  judgment in favor of HMI, stating HMI had, "the right to exclusive use in the area of hotels to the

16  Meliá family through Hotel Meliá, Inc. throughout the entire territory of the Commonwealth of

17  Puerto Rico, free from appropriation or use by defendant or their persons of the referred name Meliá

18  and/or Hotel Meliá, be it in the form of hotel, apart-hotel, condo hotel or other similar or related

19  form of business."  (See Docket Nos. 47-1 at ¶ 7; 60-4 at 5.)

20                      **G.     Meliá Trademark in Puerto Rico**

21        In 1987, Sol Meliá or its predecessor organization -Hoteles Mallorquinos S.A.- acquired the

22  stocks of Hoteles Meliá S.A. with all its assets, and obligations.  However, said sale of stock did not

23  include the trademark Meliá.  (See Docket No. 47-1 at ¶ 8.)  In 1987, Mr. Gabriel Escarrer acquired

24  a license to use the trademarks of Hoteles Meliá S.A. in Spain from Organización Meliá S.A.  (See

25  Docket No. 47-1 at ¶ 9.)  On March 15, 1995 Dorpan -subsidiary of Sol Meliá- acquired from

26  Organización Meliá S.A. the Meliá trademarks that were registered or that were pending registry in

27

28                                    4

Civil Nos. 09-1138 & 09-1188 (GAG)

Spain, Puerto Rico and around the world.  (See Docket No. 47-1 at ¶ 10.)  In 1997, Sol Meliá initiated a hotel project in Coco Beach, Río Grande, Puerto Rico.  (See Docket No. 47-1 at ¶ 12.) In 1998, Mr. Nicolás Albors sent a letter to Mr. Gabriel Escarrer notifying Hotel Meliá's opposition to the use of the name Meliá in the hotel name.  (See Docket No. 47-1 at ¶ 13.)  In 2004, the hotel opened in Río Grande under the name "Paradisus Puerto Rico."  (See Docket No. 47-1 at ¶ 14.)  On March 20, 2007, Dorpan attempted to register the trademark Gran Meliá Puerto Rico Resorts & Villas with the Department of State of Puerto Rico, but HMI filed an opposition and Dorpan voluntarily withdrew its application.  (See Docket No. 47-1 at ¶ 15.)

## II.   Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). When considering a motion for summary judgment, the court must view the evidence in the light most favorable to the non-moving party and give that party the benefit of any and all reasonable inferences.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  Moreover, at the summary judgment stage, the court does not make credibility determinations or weigh the evidence.  Id.

The moving party bears the initial burden of demonstrating the lack of evidence to support the non-moving party's case.  Celotex, 477 U.S. at 325.  "The movant must aver an absence of evidence to support the nonmoving party's case." Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994).  The burden then shifts to the non-movant to establish the existence of at least one genuine and material fact in dispute.  Rogan v. City of Boston, 267 F.3d 24, 27 (1st Cir. 2001) (citing Maldonado-Denis v. Castillo-Rodriguez, 23 F.3d 576, 581 (1st Cir. 1994)). "An issue is genuine if 'it may reasonably be resolved in favor of either party' at trial, and material if it 'possess[es] the capacity to sway the outcome of the litigation under the applicable law.'" Iverson v. City of Boston, 452 F.3d 94, 98 (1st Cir. 2006) (alteration in original) (citations omitted).

**Civil Nos. 09-1138 & 09-1188 (GAG)**

1    The non-moving party must "set forth specific facts showing that there is a genuine issue for

2  trial." FED.R.CIV.P. 56(e).  The non-movant "cannot rest upon mere allegation or denial of the

3  pleadings."  Fed. Deposit Ins. Corp. v. Municipality of Ponce, 904 F.2d 740, 742-43 (1st Cir. 1990)

4  (citing FED.R.CIV.P. 56)).  That is, "[t]o defeat a motion for summary judgment, evidence offered

5  by the non-movant must be significantly probative of specific facts." Prescott v. Higgins, 538 F.3d

6  32, 40 (1st Cir. 2008) (citations omitted) (internal quotation marks omitted).  "The mere existence

7  of some alleged factual dispute between the parties will not defeat an otherwise properly supported

8  motion." Velazquez-Garcia v. Horizon Lines of Puerto Rico, Inc., 473 F.3d 11, 15 (1st Cir. 2007)

9  (citations omitted).  Rather, "the nonmovant must present definite, competent evidence to rebut the

10  motion." Pagano v. Frank, 983 F.2d 343, 347 (1st Cir. 1993) (citations omitted) (internal quotation

11  marks omitted).

12    If the court finds that some genuine factual issue remains, the resolution of which could

13  affect the outcome of the case, then the court must deny summary judgment.  Martinez-Rodriguez

14  v. Guevara, 597 F.3d 413, 419 (1st Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242,

15  248 (1986)).  Summary judgment may be appropriate, however, if the non-moving party's case rests

16  merely upon "conclusory allegations, improbable inferences, and unsupported speculation."

17  Forestier Fradera v. Municipality of Mayaguez, 440 F.3d 17, 21 (1st Cir. 2006) (quoting Benoit v.

18  Technical Mfg. Corp., 331 F.3d 166, 173 (1st Cir. 2003)).

19    "Cross-motions for summary judgment do not alter the summary judgment standard, but

20  instead simply require [the court] to determine whether either of the parties deserves judgment as

21  a matter of law on the facts that are not disputed."  Wells Real Estate Inv. Trust II, Inc. v.

22  Chardon/Hato Rey P'ship, S.E., 615 F.3d 45, 51 (1st Cir. 2010) (citing Adria Int'l Group, Inc. v.

23  Ferré Dev. Inc., 241 F.3d 103, 107 (1st Cir. 2001)) (internal quotation marks omitted).  Although

24  each motion for summary judgment must be decided on its own merits, each motion need not be

25  considered in a vacuum.  Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R. American

26  Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks omitted).

27

28                                    6

Civil Nos. 09-1138 & 09-1188 (GAG)

1   "Where, as here, cross-motions for summary judgment are filed simultaneously, or nearly so, the

2   district court ordinarily should consider the two motions at the same time, applying the same

3   standards to each motion." Wells Real Estate Inv. Trust II, Inc., 615 F.3d at 51 (quoting P.R.

4   American Ins. Co. v. Rivera-Vázquez, 603 F.3d 125, 133 (1st Cir. 2010)) (internal quotation marks

5   omitted).

6   ### III.   Claim and Issue Preclusion

7           A state court judgment has the same preclusive effects in federal court as it would in the state

8   it was issued. Garcia Monagas v. De Arellano, 2012 WL 883197, at *3 (1st Cir. June 6, 2010).

9   Puerto Rico is considered a state for purposes of claim and issue preclusion. See id. (citing Boateng

10  v. InterAmerican Univ., Inc., 210 F.3d 56, 61 (1st Cir. 2000)). In determining the preclusive effects

11  of a state court judgment, federal courts look to local law. See Catullo v. Metzner, 834 F.2d 1075,

12  1077 (1st Cir. 1987) (citing Oliveras v. Miranda Lopo, 800 F.2d 3, 6 (1st Cir. 1986)). In Puerto

13  Rico, the doctrines of claim and issue preclusion are both contained within P.R. Laws Ann. tit. 31

14  § 3343. See R.G. Financial Corp. v. Vergara-Nunez, 446 F.3d 178, 183 (1st Cir. 2006) (stating both

15  doctrines included within civil code, albeit with different requirements). Section 3343 states,

16          In order that the presumption of the res adjudicata may be valid in another
        suit, it is necessary that, between the case decided by the sentence and that in
17      which the same is invoked, there be the most perfect identity between the
        things, causes, and persons of the litigants, and their capacity as such.
18
    P.R. Laws Ann. tit. 31 § 3343.
19
    ### A.   Issue Preclusion (Collateral Estoppel)
20
21          Issue preclusion bars the relitigation of a fact essential to the judgment in previous litigation

22  between the same parties. See Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 12 (1st Cir. 2010).[2]

23

24      [2] Neither party submitted or cited to translated case law regarding the elements of claim
    preclusion Puerto Rico law. HMI relies solely upon federal case law while DSD relies upon an
25  untranslated case of the Puerto Rico Supreme Court. The court itself cannot find a translated case
    stating the elements of issue preclusion. However, the elements for issue preclusion are the same
26  as the elements for claim preclusion, with the exception of the identity of causes. See Worldwide
    Food Dis., Inc. v. Colon et al., 133 D.P.R. 827, 1993 P.R.-Eng. 840, 035 (1993). Seemingly, the
27

28                                                  7

**Civil Nos. 09-1138 & 09-1188 (GAG)**

The First Circuit has stated:

> A party seeking to invoke the doctrine of collateral estoppel must establish that (1) the issue sought to be precluded in the later action is the same as that involved in the earlier action; (2) the issue was actually litigated; (3) the issue was determined by a valid and binding final judgment; and (4) the determination of the issue was essential to the judgment.

Ramallo Bros. Printing, Inc. v. El Dia, Inc., 490 F.3d 86, 90 (1st Cir. 2007). As the parties dispute each of these elements, the court analyzes each in turn.

### 1.    Identical Parties

The most contentious issue in this litigation, and the most heavily briefed by the parties, is whether Dorpan is the successor in interest to Inmobiliaria. This issue is more important to the res judicata analysis because in certain circumstances collateral estoppel can be applied against a party not involved in previous litigation. See Rodriguez-Garcia v. Miranda-Marin, 610 F.3d 756, 771 (1st Cir. 2010) (holding non-mutual collateral estoppel can be used when one of the parties in the present litigation was not a party to the previous litigation). However, for res judicata to apply, the parties must be identical, or in privity. See Cruz Berrios v. Gonzalez-Rosario, 630 F.3d 7, 14 (1st Cir. 2010) (holding Puerto Rico res judicata law does not require perfect identity of parties in each suit, but requires parties to be in privity to the parties in the first suit in order for first suit to have preclusive effects).

Non-mutual collateral estoppel may be used either offensively or defensively. See Rodriguez-Garcia, 610 F.3d at 771. Non-mutual collateral estoppel is used offensively when it is used by a plaintiff who seeks to preclude a defendant from re-litigating an issue the defendant has previously unsuccessfully litigated. See id. Non-mutual collateral estoppel is used defensively when a defendant seeks to preclude a plaintiff from re-litigating an issue the plaintiff has previously unsuccessfully litigated. See id.

In this case, HMI attempts to use both claim and issue preclusion as a means to prevent DSD

---

elements for claim preclusion under Puerto Rico law and under federal law are similar, if not the same. Therefore, the court shall follow federal precedent on this matter.

Civil Nos. 09-1138 & 09-1188 (GAG)

1  from bringing its suit. HMI claims that Dorpan is the successor of interest to Inmobiliaria and

2  therefore was in privity with a party involved in the 1978 Case.  Claim and issue preclusion would

3  bar an unsuccessful party, or as in this case a party in privity, from re-litigating the issues of the first

4  suit.  However, HMI must demonstrate that DSD is the successor of interest of Inmobiliaria or at

5  least demonstrate there is a genuine issue of material fact as to whether Dorpan ever succeeded to

6  the interest of Inmobiliaria.

7       To support this claim HMI relies upon the deposition testimony of Monica Julve ("Julve"),

8  a representative of DSD. In that deposition, the strongest evidence HMI musters is that Julve

9  recognizes the logo used by Inmobiliaria as one now owned by Sol Meliá.  (See Docket No. 60-7

10 at 1-2.) HMI argues this fact demonstrates that Sol Meliá is the successor in interest of Inmobiliaria

11 because Inmobiliaria was the subsidiary of Meliá International Hoteles, a company which Sol Meliá

12 acquired.  (See Docket No. 47 at 7.)  HMI further argues Inmobiliaria was owned by an organization

13 known as Meliá International Hoteles and Inmobiliaria stated Meliá International Hoteles' central

14 offices were in Madrid (See Docket No. 60-2.)  An organization by the name of Meliá Inernational

15 Hoteles is currently owned by Sol Meliá.  (See Docket No. 45 at ¶ 8-10.)

16      However, the gap between the evidence that Sol Meliá is the successor of Inmobiliaria's

17 interest is too wide for the court to bridge.  The only evidence that Inmobiliaria was a subsidiary of

18 the Meliá International Hoteles that DSD later acquired is the logo used by Inmobiliaria and the

19 common name of Meliá International Hoteles.  There are no corporate documents to support HMI's

20 contention for either proposition.  There is no evidence showing the Meliá International Hoteles that

21 owned Inmobiliaria was the same Meliá International Hoteles that DSD acquired.  It is speculative

22 to assume the Meliá International Hoteles logo was owned by a Spanish corporation, which was

23 eventually acquired by Sol Meliá.  Within its answer to the 1976 complaint, Inmobiliaria stated that

24 its parent corporation, Meliá International Hoteles, was a Panamanian limited partnership, not a

25 Spanish organization. (See Docket No. 80-13 at 2.) DSD admits it acquired a Spanish organization

26 named Meliá International Hoteles, but Inmobiliaria has never been linked to that organization.  In

27

28                                                      9

Civil Nos. 09-1138 & 09-1188 (GAG)

1 order to create a material issue of fact, HMI must provide more specific evidence to show that

2 Inmobiliaria's interest was acquired by DSD.  HMI has not met this burden.  Therefore, the court

3 finds, based on the evidence put forth by HMI, no reasonable jury could conclude that Sol Meliá is

4 the successor in interest of Inmobiliaria.

5                              **2.      Identical Issue**

6        HMI claims the issue in the 1978 Case is the same as the current litigation because it deals

7 with HMI's ability to exclusively use the Meliá name within Puerto Rico.  (See Docket No. 66 at

8 7-9.)  Dorpan argues the issue in the current litigation is different because Dorpan owns several

9 federal trademarks to the Meliá name making the litigation a trademark dispute as opposed to a suit

10 regarding ownership of the name through continuous use.  (See Docket No. 64 at 12.)  While the

11 parties approach this dispute differently than the 1978 Case, the underlying dispute is the same in

12 that HMI asserts it has the exclusive right to use the name Meliá in conjunction with hotels in Puerto

13 Rico.  DSD also claims it has the right to use the name Meliá.  Even though the legal considerations

14 may be different at the present time, the issue is the same: the right to use the Meliá name.

15 Accordingly, the court finds this element of issue preclusion has been met.

16                          **3.      Issue Actually Litigated**

17        The parties next dispute whether these issues were actually litigated in the 1978 Case.  The

18 judgment in the 1978 Case was a default judgment and usually default judgments may not be used

19 for estoppel purposes.  See N. Atl. Distrib., Inc. v. Teamsters Local Union No. 430, 497 F. Supp.

20 2d 315, 320 (D.R.I. 2007) (holding federal law does not allow default judgment to have preclusive

21 effect for collateral estoppel).  However, some exceptions exist to this general rule that allow the

22 court to give preclusive effects if the interests of fairness so require. See Dein Host, Inc. v. Pignato,

23 86 B.R. 318, 323 (D.N.H. 1988) (holding court may give preclusive effects to issues determined in

24 default judgment if issues raised, but not litigated).  However, even in such circumstances a strong

25 presumption against preclusion exists.  See id.

26        In this case, the parties agree the 1978 Case resulted in a default judgment.  HMI contends

27

28                                        10

**Civil Nos. 09-1138 & 09-1188 (GAG)**

1  that regardless of the default judgment, issue preclusion should apply in this case because

2  Inmobiliaria answered the complaint and participated in some discovery before failing to show up

3  for the hearing.  (See Docket No. 47 at 8.)  This fact does not require the court to give the 1978 Case

4  preclusive effect over the current matter.  First, there is no evidence to show the issue was previously

5  litigated.  Even assuming Inmobiliaria did participate in some discovery, there is not showing in

6  what, if any, adversarial proceedings or hearings Inmobiliaria participated.  Secondly, for the

7  exception to apply, HMI must demonstrate the unfairness it would bear if the court did not give

8  preclusive effects to the prior judgment. HMI does not make such a showing.  If the circumstances

9  were different this exception might be applicable, but under the current facts, the court finds the

10  issue was not actually litigated in the 1978 Case and there is no unfairness in not giving preclusive

11  effects to that judgment.

12                           **4.	Prior Judgment**

13       The court holds the prior judgment in the 1978 Case is not an appropriate judgment to serve

14  as the basis of issue preclusion.  As discussed above, default judgments are not typically the type of

15  judgments that have preclusive effects.  HMI points to persuasive precedent from other circuits to

16  support the proposition that a default judgment can have preclusive effects when the party has

17  participated in the litigation, but chooses not to defend the case on the merits.  See In re Bush, 62

18  F.3d 1319, 1325 (11th Cir. 1995) (holding trial court did not abuse its discretion in finding

19  preclusive effects of default judgment when party substantially participated the action).  The Bush

20  court further stated when a party attempts to frustrate the issuance of a judgment through default,

21  the court is particularly justified in giving the default judgment preclusive effects.  See id.

22       However, these elements are not present in this case.  HMI cannot reasonably argue

23  Inmobiliaria defaulted in order to escape judgment on the merits.  There is no allegation or factual

24  scenario that would allow the court to believe Inmobiliaria acted in such a manner in order to

25  preserve arguments thirty years later.  Additionally, HMI does not support with evidence the extent

26  to which Inmobiliaria participated in the 1978 Case.  Without such support, the court cannot

27

28

Civil Nos. 09-1138 & 09-1188 (GAG)

1  determine that Inmobiliaria participated to such a degree as to warrant conferring preclusive effects
2  on the 1978 default judgment.  Therefore, the court finds the prior judgment does not carry
3  preclusive effects.

### 5.    Determination Essential to Judgment

5  Having found the issues in the 1978 Case were not actually litigated, it follows that the
6  determination of naming rights by the state court was not essential to the judgment that was entered.
7  Default judgment was entered.  The decision of the court was not based on a vigorous defense of the
8  parties' positions.  (See Docket No. 60-4.)  It was made after one side presented its arguments.
9  Although the court did state numerous findings of fact that include the finding that a third party may
10  not use the Meliá name in regards to hotels within Puerto Rico, this is not necessarily essential to
11  the judgment.  Even without such a finding, the court could have found for HMI solely because
12  Inmobiliaria defaulted.  The court finds the determination that HMI had the sole right to use the
13  name Meliá in conjunction with hotels on the island was not essential to the previous judgment.

### B.    Claim Preclusion (Res Judicata)

15  Claim preclusion prohibits parties from litigating any claim that was, or could have been,
16  litigated in a matter.  See Garcia Monagas, 2012 WL 883197, at *4.  A party asserting claim
17  preclusion under Puerto Rico law must demonstrate: "(i) there exists a prior judgment on the merits
18  that is final and unappealable; (ii) the prior and current actions share a perfect identity of both thing
19  and cause; and (iii) the prior and current actions share a perfect identity of the parties and the
20  capacities in which they acted." Id. (internal quotation marks omitted).  If the same object or matter
21  is involved between the present and prior case, then the action is considered to have a perfect identity
22  of thing. See id.  If the actions derive from the a common nucleus of operative fact, then the actions
23  share an identity of cause.  See id.  In order to establish perfect identity of the parties, it must be
24  demonstrated that the parties in the present and prior action are the same or that the parties in the
25  present and prior action were in privity with each other.  See id. (citing P.R. Laws Ann. tit. 31, §
26  3343).

12

Civil Nos. 09-1138 & 09-1188 (GAG)

1    The court applies the foregoing analysis of the elements for issue preclusion to the elements

2    of claim preclusion.  The court finds elements (i) and (iii) to be lacking in this case because the

3    judgment was not on the merits and the parties are not the same between the 1978 litigation and the

4    present case.  Therefore, claim preclusion does not bar DSD's claims in this case.

5    For the foregoing reasons, the court **DENIES** HMI's partial motion for summary judgment

6    seeking claim and issue preclusion.

7    ### IV.    Validity of Dorpan's Trademarks

8    The parties each argue they have the superior right to use the Meliá name in conjunction with

9    hotel services on the island of Puerto Rico.  However, even if DSD is granted the right to the Meliá

10   name within Puerto Rico, HMI may be able to establish its prior, consistent use of the name,

11   allowing HMI to continue to use the Meliá name in its location in Ponce, while DSD is allowed to

12   use the name on the rest of the island.  Because these issues are separable and distinct, each will be

13   taken in turn.

14   ### A.    Validity of DSD's U.S. Trademarks

15   For clarity of the record, DSD filed this complaint seeking a declaratory judgment that it

16   holds the right to use the term Meliá pursuant to its trademarks.  DSD claims it has senior rights to

17   use the Meliá name within the U.S. because it owns various U.S. registrations under the Lanham

18   Act, 15 U.S.C. §§ 1051 *et seq.*  ("Lanham Act")*.*  While DSD does not assert a trademark

19   infringement claim against HMI, the court lays out this framework for such a claim because the first

20   prong of this test is essential to DSD's argument and HMI uses the third prong in order to argue that

21   DSD and HMI cannot both use the term Meliá within Puerto Rico without causing confusion.

22   Therefore, the trademark infringement analysis is useful in deciding these issues.

23   The Lanham Act allows the trademark holder to protect the trademark against infringement

24   from others.  See Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 11-12 (1st Cir.

25   2008).  The Lanham Act was designed to provide nationwide protection to trademark users.  See

26   Thrifty Rent-A-Car Sys., Inc. v. Thrift Cars, Inc., 831 F.2d 1177, 1180 (1st Cir. 1987); Purolator,

27

28                                                          13

Civil Nos. 09-1138 & 09-1188 (GAG)

1   Inc. v. EFRA Distribs., Inc., 687 F.2d 554, 558-59 (1st Cir. 1982) (holding Lanham Act protection

2   for trademarks apply to Puerto Rico).  The standard rule is the first to appropriate at mark has the

3   exclusive right to use that mark in the course of business.  See Thrifty, 831 F.2d at 1180.  A business

4   may register its trademark in order to protect is exclusive right to use the mark throughout the nation.

5   See id.  The registration of a mark also acts to put all other users of the same or confusingly similar

6   mark on constructive notice of the trademark holder's interest in the mark.  See id.  Section 1065

7   of the Lanham Act allows a mark to become incontestable when a registrant files, "an affidavit

8   within one year after the expiration of any five year period following registration, during which the

9   mark has been in continuous use."  Thrifty, 831 F.2d at 1180.  That section also requires a registrant

10   to show there have been no final decisions adverse to the registrant's claim of ownership to the

11   mark, there are no proceedings pending involving the ownership of the trademark, and the trademark

12   is not a generic name for the good or service for which it is registered.  See 15 U.S.C. § 1065(1-4).

13        The holder of a trademark may bring a trademark infringement claim under the Lanham Act.

14   In order to do so, the trademark holder must prove:  (1) it owns the marks in question; (2) another

15   company or business used the same or similar marks without the registrant's permission; and (3) the

16   infringing use of the mark is likely to confuse consumers.  See Venture Tape Corp., v McGills Glass

17   Warehouse, 540 F.3d 56, 60 (1st Cir. 2008).  In order to demonstrate the likelihood of consumer

18   confusion, the First Circuit has developed eight criteria the district courts should evaluate.  These

19   criteria are:

20          (1) the similarity of the marks; (2) the similarity of the goods (or, in a service
       mark case, the services); (3) the relationship between the parties' channels of

21          trade; (4) the juxtaposition of their advertising; (5) the classes of prospective
       purchasers; (6) the evidence of actual confusion; (7) the defendant's intent in

22          adopting its allegedly infringing mark; and (8) the strength of the plaintiff's
       mark.

23

24   Visible Sys. v. Unisys, 551 F.3d 65, 73 (1st Cir. 2008).

25        HMI recognizes that DSD owns the registered trademark to the Meliá name.  However, HMI

26   asserts that the registration of the mark is invalid and was procured fraudulently.  (See Docket No.

27   66 at 16-19.)  Additionally, HMI asserts that once this trademark is deemed fraudulent, DSD cannot

28                          14

Civil Nos. 09-1138 & 09-1188 (GAG)

1  use the Meliá name in Puerto Rico due to the likelihood of consumer confusion.  However, these

2  arguments are not sufficient to invalidate DSD's registration.

3      Section 1114e of the Lanham Act provides holders of an international trademark the ability

4  to register those trademarks within the U.S.  See 15 U.S.C. § 1141e.[3] The registration for the Gran

5  Meliá mark specifically states it was granted due to the Spanish registration of this mark.  (See

6  Docket No. 49-31.)  This demonstrates the registration was not granted based on prior use within

7  the U.S.

8      Secondly, in order for HMI to succeed on its claim that Dorpan fraudulently obtained the

9  trademark registration, HMI must show that Dorpan included false or material misrepresentations

10  of fact in its registration materials.  See 15 U.S.C. § 1115(b)(1); Universal Nutrition Corp. v.

11  Carbolite Foods, Inc., 325 F. Supp. 2d 526, 531 (D.N.J. 2004).  To support this claim HMI points

12  to Dorpan's registration affidavit in which Dorpan states Dorpan was using the mark in commerce

13  and no other person had the right to use the mark.  (See Docket No. 49-31.)  However, as stated

14  above, Dorpan obtained the registration based on its international use of the mark.  (See id.) Further,

15  there is little evidence to support HMI's contention that Dorpan applied for this mark with

16  knowledge of HMI's use.  Dorpan applied for the mark based on its prior use in connection with the

17  businesses it ran internationally and within the U.S. for both hotel and travel services.  Therefore,

18  with a lack of evidence to prove HMI was attempting to appropriate the Meliá name away from HMI

19  by registering the name as a trademark, the court will not invalidate Dorpan's trademark registration

20  to the name Meliá.  DSD's trademark is valid and proper.

21          **B.      Limited Area Exception**

22

23  _____

24

25  [3]  15 U.S.C. § 1141e states: "Subject to the provisions of section 1141h of this title, the
    holder of an international registration shall be entitled to the benefits of extension of protection of

26  that international registration to the United States to the extent necessary to give effect to any
    provision of the Madrid Protocol."

27

28                                    15

**Civil Nos. 09-1138 & 09-1188 (GAG)**

1        The Lanham Act, specifically 15 U.S.C. § 1115(b)(5),[4] allows for a limited area exception

2  to the incontestability of a registered trademark.  See Thrifty, 831 F.2d at 1180-81.  Essentially, this

3  subsection carves out an exception for junior trademark users who operate in a remote location.  See

4  id. at 1181 (citing Hanover Star Milling Co. v. Metcalf, 240 U.S. 403 (1916); United Drug Co. v.

5  Theodore Rectanus Co., 248 U.S. 90 (1918)).  The junior user may have the right to continued use

6  of an infringing mark, so long as the use of the infringing mark was established prior to the

7  registration of the mark by the senior user.  See Thrifty, 831 F.2d at 1181. To sustain this defense

8  a junior user must demonstrate: (1) that it adopted, without knowledge of the senior mark users use,

9  its mark before the senior user registered the mark; (2) the extent of the trade area in which the junior

10  user operated prior to registration by the senior operator; and (3) the junior users continuously used

11  the mark in the trade area prior to registration by the senior mark user.  See Thrifty, 831 F.2d at

12  1181.  A junior mark user's interest is frozen at the time the senior mark user registers the mark.

13  See id.  This essentially means the junior mark user is not allowed to expand its business beyond the

14  geographical location once the senior user register's the mark.

15        DSD does not contest HMI's right to continue using the Meliá name in connection to the

16

17

---

18    [4] In pertinent part, Section 1115(b)(5) states:

19        To the extent that the right to use the registered mark has become incontestable under section 1065 of this title, the registration shall be

20        conclusive evidence of the validity of the registered mark and of the registration of the mark, of the registrant's ownership of the mark, and of the

21        registrant's exclusive right to use the registered mark in commerce. [Except when] the mark whose use by a party is charged as an infringement was

22        adopted without knowledge of the registrant's prior use and has been continuously used by such party or those in privity with him from a date prior

23        to (A) the date of constructive use of the mark established pursuant to section

24        1057(c) of this title, (B) the registration of the mark under this chapter if the application for registration is filed before the effective date of the Trademark

25        Law Revision Act of 1988, or (C) publication of the registered mark under

26        subsection (c) of section 1062 of this title: Provided, however, That this defense or defect shall apply only for the area in which such continuous prior

27        use is proved . . .

28                    16

**Civil Nos. 09-1138 & 09-1188 (GAG)**

1    hotel in Ponce. (See Docket No. 44 at 13.)  As such, the only remaining analysis is whether the two

2    uses of the term Meliá can co-exist within Puerto Rico.  The court finds they can. In so doing the

3    court notes there is no single factor that is dispositive of this analysis and the application of these

4    factors should be flexible as opposed to a result of strict calculation.  See Venture Tape, 540 F.3d

5    at 60 (stating no single factor determines consumer confusion inquiry); Attrezzi, LLC v. Maytag

6    Corp., 436 F.3d 32, 39, (1st Cir. 2006) (holding assessment of consumer confusion a result of

7    consultation of factors, not result of mechanical formula).

8         The criteria are split in this case. In support of consumer confusion, the marks, Gran Meliá

9    and Hotel Meliá, are reasonably similar.  Both businesses are hotels, that advertise in Puerto Rico

10   and seek to attract overnight lodgers.  Additionally, HMI has put forth some evidence of confusion

11   by vendors and patrons between Gran Meliá and HMI.  (See Docket Nos. 66-2, 66-3 & 66-4.)

12   However, opposing the conclusion that the simultaneous use of these marks will lead to confusion

13   are the rest of the factors, mainly that neither party accuses the other of subjectively attempting to

14   profit from the good-will earned by the other and the overall strength of each mark.  HMI has built

15   up a strong reputation within the Ponce area, while DSD has built up strong international good-will

16   outside of Ponce.

17        With the factors split, the court finds these two marks can co-exist within Puerto Rico

18   without causing substantial confusion to the reasonable consumer.  However, the court must define

19   the limits within which each mark may be used.  See Thrifty, 831 F.2d 1181.  HMI's use was frozen

20   at the time DSD acquired the trademark on December 30, 1997.  (See Docket No. 49-11.)  On this

21   date, HMI's use of the Meliá mark is frozen.  See Thrifty, 831 F.2d at 1181.  As of this date, HMI

22   operated one hotel in Ponce, Puerto Rico.  HMI had no plans to expand its business at that time and

23   had been operating in that location for the previous eighty to one hundred years.  These facts

24   demonstrate HMI was in continuous operation within Ponce, long before the registration of Gran

25   Meliá by Dorpan.  Therefore, the court finds HMI may continue to use the Meliá name within Ponce,

26   Puerto Rico, but must refrain from using the Meliá name in any future business ventures outside of

27

28

**Civil Nos. 09-1138 & 09-1188 (GAG)**

Ponce.  Conversely, DSD is barred from extending its services into Ponce, but may use its trademarks throughout the rest of the island and the U.S.

Therefore, the court **GRANTS** DSD's motion for summary judgment (Docket No. 44).

**V.      Conclusion**

The court **DENIES** HMI's partial motion for summary judgment, Civil No. 11-1188 (Docket No. 47).   For the abovementioned reasons, the court **GRANTS** DSD's motion for summary judgment, Civil No. 11-1138 (Docket No. 44).

**SO ORDERED.**

In San Juan, Puerto Rico this 31st day of March 2012.


*S/Gustavo A. Gelpí*

GUSTAVO A. GELPÍ

United States District Judge

18